18 So.2d 806

## CENTRAL MFRS'. MUT. INS. CO. v. CHEEK.

5 Div. 203.

Court of Appeals of Alabama.

June 13, 1944.

Rehearing Denied June 27, 1944.

Jacob A. Walker, of Opelika, for appellant.

Will O. Walton, of LaFayette, for appellee.

BRICKEN, Presiding Judge.

Appellee filed suit in the circuit court of Chambers County against appellant on a fire insurance policy. The pleadings were in short by consent, and the defenses, to state them briefly, were:

(1) Plaintiff warranted that the hazard would not be increased by the insured and breached that warranty by removing a substantial portion of the roof of the insured building before the fire.

(2) Plaintiff breached the aforesaid warranty by tearing down one or more posts from the front porch and a hole in the roof of the insured building "about half the size of a window shade and larger than a barrel head" in an effort to dispossess his wife who lived in the property at the time and was estranged from him at said time.

(3) Plaintiff warranted that his interest in the insured property was that of unconditional and sole owner. Said warranty was breached by the adverse possession of the wife and a claim of the right of Mrs. Cheek who had paid off a part of the balance owed on a mortgage on the property.

(4) Plaintiff warranted that the insured property was a building with a roof and breached the warranty by the removal of a substantial portion of the roof.

(5) Plaintiff warranted that the property was occupied by him, whereas it was occupied by Mrs. Cheek.

(6) Plaintiff warranted that the insured premises should not become vacant or unoccupied and so remain for ten days, and breached the warranty by driving the occupants out of the insured property more than ten days before the fire and caused the insured property to remain vacant for said period of time.

The trial was before the court without a jury. Judgment was rendered for plaintiff in the sum of $900, besides his costs. The defendant brings the case here for review.

**(1)** The policy provides: "This entire policy, unless otherwise provided by agreement endorsed or added hereto, shall be void * * * if the hazard be increased by any means within the control or knowl-·edge of the insured." Under this provision it was incumbent upon the appellant to show (a) an increase in hazard, (b) by some means within the control, or (c) knowledge of the insured. The trial court found that the hazard had not been increased by any means within the control and knowledge of the insured.

Mr. Avery, an expert of thirteen years experience, was asked: "Q. So you think that the hole in the roof only so broad and on this house increased the hazard in your judgment? Ans. Well, it would make it more vulnerable to fire from the outside if sparks from kitchens lighted on this place that was exposed, or dropped down through a hole in the dwelling." Mr. Avery further testified that in his opinion the hole in the roof increased the hazard 100 per cent.

**■■** The Supreme Court of Alabama has repeatedly ruled that the testimony of an expert is not binding on the court or jury, and in view of Mr. Avery's testimony that a small hole in the roof increased the hazard 100 per cent, the trial court might well have reached the conclusion that his testimony on this point was not entitled to much weight, 9 Alabama Digest, Evidence, ☞570, 571.

We are unable to say that a small hole in the roof of the insured property increased the hazard under the circumstances that prevailed in this case. We are not convinced that there was any error in the trial court's conclusion in that respect.

**(2)** The claim that plaintiff breached the warranty referred to by tearing down one of the front posts and a hole in the roof of the insured building "about the size of a window shade and larger than a barrel head" in an effort to dispossess his wife, is not sustained by the evidence. That plaintiff tore down a post and made a hole in the roof of the building is established by the evidence, but we are by no means satisfied that this conduct ·on the plaintiff's part amounted to a breach of the warranty.

**(3)** The policy sued on provides that the policy should be void, "if the interest of the insured be other than unconditional and sole ownership." It appears without dispute that the plaintiff purchased the property from C. E. Lunsford and wife by deed dated June 30, 1936. The deed was filed for record on the 9th day of November, 1936. Plaintiff went in possession of the property pursuant to the deed and has claimed to own it ever since. There is nothing in the record to indicate that he ever parted with the title to the property. The evidence does tend to show that the plaintiff married his present wife in South Carolina on the 26th day of February 1921 about 21 years prior to the fire. It is claimed that this was a bigamous marriage and that his second alleged wife advanced some money with which to pay off a mortgage on the property. The record is by no means clear that the second marriage was a bigamous marriage, if that be material. During his examination as a witness plaintiff was asked: "Q. You never got a divorce from your other wife, did you?" After objection and argument the witness answered: "Yes sir." That answer was followed with this question: "Q. You did not get a divorce from the other woman, did you? Ans. No sir, that happened about twenty-five years ago." We do not know whether the witness intended to testify that he did or did not get a divorce from his other wife, nor is it clear to us what he had in mind when he said, "that happened about twenty-five years ago." The trial court saw and heard the witness and observed his manner of testifying and was in better position to interpret his testimony than is this court. However that may be, the policy sued on was issued September 28, 1941. The plaintiff and Mrs. Cheek had separated long before that time. The hole in the roof was torn about March 7, 1942. Divorce proceedings between them had been issued March 13, 1942. The fire occurred June 2, 1942. We do not understand that Mrs. Ada Cheek was claiming adversely to her husband or that she had any title on which to predicate any such claim. We think the testimony is rather susceptible of the construction that she was claiming under him and by virtue of her relation to him as wife, she claimed the right to occupy the property. It is true she claimed she was entitled to reimbursement for the sum she advanced in paying off the mortgage on the property, and it is also true that in a subsequent settlement between the husband and wife he agreed to pay her $200 out of the money recovered from this policy, but these facts do not show Mr.

Cheek's interest in the property was other than unconditional and sole owner. Presumptively he acquired a fee simple title when he purchased the property from the owner, and received a warranty deed to it and went into possession. There is nothing in the record to show that he ever parted with the title thus acquired. In the bill for divorce filed by Mrs. Cheek she averred appellee held legal title to the property.

 (4) With reference to the defense that the plaintiff warranted the insured property was a building with a composition roof, or alternatively with a roof, it was a question for the court below, who heard the witnesses and observed their manner of testifying, to decide from conflicting testimony whether a substantial portion of the roof was removed. The witness Bell testified the hole was something like a coca cola carton or a small box. "It wasn't a very large place." The removal of a small part of the roof for repair or otherwise, after the policy was issued, would not constitute a breach of this provision of the policy.

(5) The defense that the plaintiff warranted that the property was occupied by him whereas it was occupied by Mrs. Cheek, is not supported by the evidence. It is quite clear from this record that Mrs. Cheek was occupying the property because she was the wife, or at least claimed to be the wife, of Mr. Cheek. Where a woman's occupancy stems from the relation of husband and wife it can hardly be said that her possession is other than the possession of the husband particularly when it is shown by the undisputed evidence that the title to the property was in the husband.

(6) The policy contains this further provision: "This entire policy, unless otherwise provided by agreement endorsed' or added hereto, shall be void * * * if the building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

After the insured tore a hole in the roof, which was about two months before the fire, Mrs. Cheek slept at her daughter's at night. Her daughter lived about a block away. Mrs. Cheek had not moved her furniture from the house and we think the fair inference from the testimony is that she lived in the house during the day and stayed with her daughter at night on account of the fact that her boarders left because the hole was torn in the roof. Under such circumstances, the trial court may well have found that the property did not become "vacant or unoccupied" within the meaning of the policy sued on.

Able counsel who represent the appellant in this case have earnestly pressed upon us Camden Fire Ins. Ass'n v. Landrum, 229 Ala. 300, 156 So. 832. We have carefully read that case. It appears that Viola Landrum was occupying the property and claiming an interest in it adverse to the insured. In this case we are unable to find that Mrs. Cheek was claiming adversely to her husband. We are rather impressed that she claimed the right to occupy the property because she was the wife of Mr. Cheek and not because she had any independent interest in the property. As we read the record there was ample and sufficient evidence upon which to base the findings of the court below and its judgment is due to be affirmed. Birmingham News Co. v. Barron G. Collier, Inc., 212 Ala. 555, 103 So. 839; Lisenby v. Lindsey, 17 Ala.App. 467, 85 So. 827.

Affirmed.